OPINION
{¶ 1} Appellants, Dennis Smola and Shirley Smola, appeal from a May 28, 2003 judgment of the Ashtabula County Court of Common Pleas that affirmed the granting of variances to Daniel Anderson ("Anderson"), by appellee, the City of Conneaut Board of Zoning Appeals ("BZA").
 {¶ 2} This is an administrative appeal of a decision of the BZA, regarding variances granted in a permit to build a new home on real property located in Conneaut, and presently owned by Anderson. The property overlooks Lake Erie and is zoned R-5 (Residential Coastal District). The Smolas' residence is located to the south and adjacent to the Anderson property.
 {¶ 3} On April 28, 2003, Anderson's mother, Irene Anderson ("Irene"), prior owner of the Anderson property, filed an application for a zoning permit with the City of Conneaut requesting "to alter" an existing two story residence, 40 feet in length by 24 feet in width. The application was denied by William Johnston ("Johnston"), Conneaut's Housing/Zoning Inspector, on the basis that the request was for an addition to "expand [a] non-conforming structure."
 {¶ 4} Irene filed an appeal to the BZA and a hearing was held on May 8, 2003. The minutes of the appeal hearing indicate that the BZA determined that Irene's application for a permit to "erect an addition" constituted a request for "expansion of a non-conforming structure." The BZA granted her application for a permit based upon the following city zoning code sections: 705 (R-5 Residential Coastal District), 401.5 (non-conforming structure), and 1210 (special exceptions). On May 12, 2003, Johnston issued a zoning permit to Irene. It is undisputed that the permit specified that a portion of the existing home's north wall would remain and be incorporated into the newly renovated dwelling.
 {¶ 5} On July 10, 2003, Anderson filed an application for a Demolition Permit with the city, requesting the demolition of the dwelling. The application was granted. Anderson proceeded to completely demolish the residence, and constructed a new foundation expanding the size of the former dwelling.
 {¶ 6} On August 7, 2003, Johnston sent a written notice to Irene that stated: "it has come to my attention that you have completely demolished the existing non-conforming structure * * * you have constructed * * * a foundation that is in direct violation of zoning permit * * * issued May 12, 2003. Said demolition constitutes a material breach of the requirements of the zoning permit as specified in the submittal drawings and specifications and granted by the [BZA]."
 {¶ 7} On behalf of Irene, Anderson appealed the permit revocation to Johnston. In support of the appeal, Anderson submitted a letter stating that the partial north wall, which was supposed to remain and be incorporated into the renovation, did not have footings. Thus, Anderson contended that based upon safety, the entire north wall had to be removed. Anderson further requested additional modifications to the earlier granted permit. He stated that the new south wall location would have to be shifted five feet from the property line, rather than its original location of six feet from the lot line, as indicated in the plans submitted with the original permit issued to Irene. A hearing was conducted by Johnston on the revocation of Irene's permit on August 27, 2003, and her appeal was denied. In his decision to deny the appeal, Johnston noted that Anderson's written demolition contractor bids, acknowledged that a portion of the north wall was to remain for code purposes. Johnston held that the conditions of the permit were violated, and that there was no evidence presented of a clear misinterpretation of code or error in judgment. Irene then filed an appeal of the permit revocation to the BZA. On September 29, 2003, the BZA upheld the decision of Johnston revoking the permit. Irene did not appeal the revocation of the permit from the BZA to the trial court.
 {¶ 8} On October 9, 2003 Anderson filed a new application for a zoning permit to "alter a 2 story structure, 40 feet by 24 feet." This time, the application was completed in his name.[1] Johnston denied his request and noted on the application the following: "1108.4 Coastal Erosion Setback, 705 Non-conforming lot, 705 encroaches upon setbacks." Anderson then appealed the decision to deny his application for the zoning permit to the BZA. At a special meeting on October 23, 2003, the BZA voted to grant Anderson's permit to "continue" construction of a dwelling, and further amended his October 9, 2003 application requesting to construct a structure of 40 feet by 24 feet, to expand the dwelling's building footprint to 47 feet by 26 feet, based upon newly submitted blueprints. In its decision, the BZA relied upon section 1108.4 (coastal management regulations-setback requirement) and section 401.2 (single non-conforming lots of record). Further, the BZA granted Anderson the following three variances: a 21 foot rear yard setback (east side); a 4 foot side yard setback (south side), and a 37 foot side yard bluffline setback, north side). On October 27, 2003, Johnston issued a permit to Anderson in accordance with the variances granted by the BZA.
 {¶ 9} On November 7, 2003, Smola appealed the BZA's decision to the trial court. On the same date, the court issued a temporary restraining order prohibiting Anderson from any further construction of the premises. On November 11, 2003, the court ordered the extension of the TRO issued on November 7, 2003, until December 5, 2003. A hearing was set for December 4, 2003. On December 4, Smola filed a motion for continuance of the hearing and the court granted Smola's motion and rescheduled the hearing for January 29, 2004. On December 15, 2003, Smola filed a motion for release of bond posted prior to issuance of the TRO, since the TRO expired on December 5, 2003. On April 26, 2004, Smola filed an ex parte motion for stay of the October 27, 2003 permit issued by the City of Conneaut to Anderson. Smola requested the court to grant a stay of execution of the permit pending the "court's determination" of the case. On April 30, 2004, the court entered an order granting immediate stay of execution of the permit, upon Smola's filing of a $5,000 bond. Smola posted the bond, and a hearing on the ex parte order to stay was scheduled for May 18, 2004. There is no evidence in the record that further hearing was conducted on the stay of execution. In a May 28, 2004 judgment entry, the court affirmed the decision of the board, upon review of briefs and exhibits submitted by the parties. On June 7, 2004, the court entered a judgment entry releasing Smola's bond for the reason that the court affirmed the decision of the Conneaut BZA to issue Anderson's permit based upon the variances granted.
 {¶ 10} It is from this judgment that the Smolas appeal, and present the following assignments of error for our review:
 {¶ 11} "[1.] The trial court erred to the prejudice of appellants in failing to consider specific variance provisions of section 1108.5 of the code before determining whether the variance granted by the board was supported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 12} "[2.] The trial court erred to the prejudice of appellants in determining that the special circumstances or conditions applicable to the structure were not as the result of the actions of Anderson before determining that the board properly granted a variance under section 1208 of the code and affirming the board's decision.
 {¶ 13} "[3.] The trial court erred to the prejudice of appellants in failing to completely consider whether the granting of the Anderson variance under section 1208 of the code was injurious to and whether the new non-conforming structure is not detrimental to appellants, Anderson's immediate neighbors.
 {¶ 14} "[4.] The trial court erred to the prejudice appellants in failing to determine that Anderson's application was improper in that the application sought to "alter" an existing non-conforming structure rather than construct a new structure.
 {¶ 15} "[5.] The trial court erred to the prejudice of appellants in failing to determine that Anderson received a special privilege before holding that the board properly granted a variance under section 1208 of the code."
 {¶ 16} Initially, we shall address the issue of whether the trial court was without jurisdiction over this matter due to Smola's failure to properly file a notice of appeal with the BZA.[2] R.C. 2505.04 provides that "[a]n appeal is perfected when a written notice of appeal is filed, * * * in the case of an administrative-related appeal, with the administrative officer, agency, board, department, tribunal, commission, or other instrumentality involved." On November 7, 2003, appellants filed a notice of appeal with the trial court, from the decision of the BZA at a special meeting conducted on October 23, 2003. On the same day, Smola delivered copies of the notice of appeal and other pleadings to the Conneaut City Manager and Zoning Inspector Office. Specifically, the delivery was made to the Administrative Assistant to the City Manager and Zoning Inspector, as well as to Johnston. In a sworn affidavit, counsel for Smola stated that "my paralegal * * * personally served * * * a copy of the Notice of Appeal, Praecipe and other pleadings * * *. She delivered copies of such documents for each of the Defendants to the Conneaut City Manager and Zoning Inspector Office. The delivery was made to Patricia Beckwith, the Administrative Assistant to the City Manager and Zoning Inspector, and to Defendant William Johnston * * *. To the best of my knowledge as was indicated to me by Patricia Beckwith at the time of the delivery, the [BZA] does not have its own office at Conneaut City Hall and receives all deliveries made to it at the City Manager and Zoning Inspector Office."
 {¶ 17} In Dudukovich v. Housing Authority (1979),58 Ohio St.2d 202, 204, the Supreme Court of Ohio considered what would satisfy the filing requirements of R.C. 2505.04. The Court held that "`the term "filed" * * * requires actual delivery * * * [.]'" In B.P. Exploration Oil, v. Planning Comm. Village ofOakwood, 8th Dist No. 80510, 2002-Ohio-4163, at ¶ 13, the Eighth District, reasoned that based upon Dudukovich, "R.C. 2505.04, is designed as a notice provision, requiring actual delivery * * *." This court adopted the reasoning set forth in BPExploration, and its interpretation of Dudukovich, in GenesisOutdoor Adver. v. Deerfield Twp. Bd. of Zoning Appeal, 11th Dist No. 2001-P-0137, 2002-Ohio-7272, at ¶ 15. In Genesis, we distinguished between circumstances where an appellant requests the clerk of courts to serve findings, from the situation where an appellant actually delivers its notice of appeal to the BZA. Id. at ¶ 19. In the case at bar, Smola actually delivered the notice of appeal to the only known office of the Conneaut BZA. That the wording of the affidavit referred to "service" rather than "filing" does not alter the fact that actual delivery was accomplished. Thus, the trial court did not commit error in its decision that appellants' filing of the notice of appeal complied with the requirements of R.C. 2505.04.
 {¶ 18} The BZA's reliance on Marks v. Streetsboro PlanningComm., 98-P-0076, 1999 Ohio App. LEXIS 5781, is misplaced. InMarks, the appellant, challenging the decision of the city planning commission, filed a notice of appeal with the Portage County Clerk, and requested the clerk to serve the planning commission the appeal by certified mail. Id. at 2. In the case sub judice, Smola personally delivered the notice of appeal to the only known place for deliveries to the BZA.
 {¶ 19} We next turn to appellants' assignments of error. The Smolas' assignments of error are interrelated and concern the BZA's decision to grant Anderson's permit, based upon variances. Thus, we shall address them in a consolidated fashion.
 {¶ 20} R.C. 2506.04 governs the procedure for administrative appeals and provides: "[t]he court [of common pleas] may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34; Dudukovich at 207; Brown v. PainesvilleTwp., 11th Dist. No. 2004-L-047, 2005-Ohio-5608, at ¶ 10. Thus, in the case at bar, the standard of review applied by the trial court in an administrative appeal is whether the BZA's decision to grant the variances is supported by the preponderance of reliable, probative, and substantial evidence in the record. The court of common pleas may not substitute its judgment for that of the agency, especially in areas of administrative expertise.Dudukovich at 207, Community Concerned Citizens, Inc. v. UnionTwp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 456.
 {¶ 21} An administrative appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope. Unlike the common pleas court, which has the ability to weigh the evidence, an appellate court is limited to reviewing the judgment of the common pleas court strictly on questions of law. Kisil at 34;Brown at ¶ 10; Battaglia v. Newbury Twp. Bd. of ZoningAppeal, 11th Dist. No. 99-G-2256, 2000 Ohio App. LEXIS 5755, at 7-8. Thus, R.C. 2506.04 requires the court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence. Kisil at 34. In administrative appeals under R.C.2506.04, "[w]ithin the ambit of `questions of law' for appellate court review would be abuse of discretion by the common pleas court." Kisil at 34, fn. 4. Studar v. Aurora City Bd. ofZoning Appeals, (Dec. 7, 2001), 11th Dist. No. 2001-P-0015, 2001 Ohio 8780, at 5. Abuse of discretion connotes more than an error of law or of judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 22} The Zoning Code for the City of Conneaut contains two provisions that apply to the bluffline setback variance that was granted to Anderson.
 {¶ 23} Section 1108.2 of the Conneaut Zoning Code pertains to coastal residential construction and requires that: "* * * newpermanent structures * * * must be constructed at a sufficient distance landward from the bluffline to insure that the structures are not prematurely undermined and destroyed by erosion. The required distance between the bluffline and the lakeward side of the permanent structure is the setback." (Emphasis added).
 {¶ 24} Section 1108.4 of the zoning code establishes that the minimum setback between the bluffline and lakeward side of the structure is forty-five feet. Section 1108.5 concerns variance criteria and requires that, if a parcel does not have adequate depth to accommodate the forty-five foot setback, the following pertinent requirements be met: (1) that the structure must be located as far landward of the bluffline as zoning restrictions allow; (2) that the structure be designed and constructed to be moveable; (3) that a long term erosion control device be constructed and properly maintained; and; (4) that the structure shall meet the approval of the Ohio Department of Natural Resources.
 {¶ 25} In addition, Section 1208 of the Conneaut Zoning Code provides that the BZA may grant a variance if certain findings are made by the board. The findings pertinent to the case sub judice are as follows:
 {¶ 26} "* * * (2) The special circumstances or conditions applying to the building or land in question are peculiar to such lot or property, and do not result from the actions of the applicant and do not apply generally to other land or buildings in the vicinity. (3) The literal interpretation of the provisions of this ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this ordinance. (4) The granting of the variance is necessary for the preservation and enjoyment of the substantial property right and not merely to serve as a convenience to the applicant. (5) That granting the variance requested will provide the minimum necessary relief to alleviate the hardship and will not confer on the applicant any special privilege which is denied by this ordinance to other lands, structures or buildings in the same district. (6) That granting of the variance will be in harmony with the general purpose and intent of this ordinance, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare. * * * The [BZA] shall make a record of all its proceedings, setting forth the reasons for its decisions." (Emphasis added.)
 {¶ 27} In essence, the crux of Smola's appeal is that the BZA failed to require compliance with Section 1108.5 of its zoning regulations, when it granted Anderson's bluffline variance, which Smola contends, applied to the property upon the demolition of the entire residence.
 {¶ 28} It is undisputed that the Anderson property is located in an R-5 coastal, residential area, and the pre-existing residence was located on what would be a nonconforming lot, as defined by the current Conneaut Zoning Code. It is further undisputed that as a condition of the original permit issued, part of the north wall of the pre-existing residence was to remain, and that the application and permit was granted without application of the variance regulations from section 1108. By insuring that one part of the wall remained, any question about its nonconforming status as opposed to "new construction" would be assured.[3] Further, the original permit issued to Anderson's mother did not grant a variance from the city's coastal setback regulations as to new construction. It is evident that the BZA determined that by maintaining the existence of the partial north wall, the proposed addition to the residence would not constitute "new construction" and trigger application of the coastal regulations. However, Anderson demolished the entire structure. At that time, the permit was revoked. Anderson's application for a new permit to alter the residence was denied by Johnston for violations, including Section 1108.4 coastal regulations as to the bluffline setback. It is further apparent that the BZA recognized that by demolishing the entire structure, coastal erosion setback regulations of section 1108 for new construction applied to the construction of the premises.
 {¶ 29} In its October decision, the BZA specifically referenced the bluffline setback requirement of code section 1108.4, and granted a substantial 37-foot variance from the required 45-foot bluffline setback. However, in rendering its decision, the BZA failed to address the applicability of the variance criteria pursuant to 1108.5. The transcript of the hearing is a part of the record before this court. The BZA's decision was as follows: "* * * in the matter of the Daniel R. Anderson application, for the construction of a residence * * *, I'm making a motion to approve continuation of the construction of the residence. I'm doing that based on Section 1208 to cover a 21 foot rear yard setback, a 4 foot side yard setback on the south side (10 foot requirement), a 37 foot north side yard variance (45 foot bluffline requirement), and also covered under Section 1108.4 * * * [.]" There is no evidence that the board addressed the variance regulations of Section 1108.5 as applied to the bluffline setback variance as it relates to a required showing of movability of the structure and ODNR approval. Thus, as a matter of law, the trial court abused its discretion when it determined that the board's decision to grant the bluffline setback variance was supported by a preponderance of reliable, probative evidence.
 {¶ 30} We further note that Section 1208 of the city zoning code sets forth well-recognized general standards of variance procedure, while section 1108 is a more specific regulation that establishes criteria to be met as a condition precedent to the granting of bluffline setback variance requests for properties located in the Coastal Zone Areas. The intent of the Coastal Zone regulations "is to promote and protect human life and health, minimize the loss of structures to coastal erosion, and reduce extraordinary governmental expenditure for erosion protection, and relief." Conneaut Zoning Code Section 1108.1.
 {¶ 31} It is well established in Ohio that where both a specific and general statute apply, the more specific statute governs. R.C. 1.51, states: "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." "When two statutory provisions are alleged to be in conflict, R.C. 1.51
requires us to construe them, where possible, to give effect toboth. Gahanna-Jefferson Local School Dist. Bd. Of Edn. v. Zaino
(2001), 93 Ohio St.3d 231, 234 (Emphasis sic.); SchindlerElevator Corp. v. Tracy (1999), 84 Ohio St.3d 496, 499. It follows that this reasoning applies to regulations in city zoning codes as well.
 {¶ 32} However, while we agree with Smola's argument, courts in Ohio have held that when an appeal involves the construction of a building and the appellant fails to obtain a stay of execution of the trial court's ruling, and construction commences, the appeal is rendered moot. Poulson v. Wooster CityPlanning Comm., 9th Dist. No. 04CA0077, 2005-Ohio-2976, at ¶ 7;Nextel W. Corp. v. Franklin County Bd. of Zoning Appeals, 10th Dist. No. 03AP-625, 2004-Ohio-2943, at ¶ 13; Pinkney v.Southwick Invs., 8th Dist. Nos. 85074 and 85075, 2005-Ohio-4167, at ¶ 14. Here, construction of Anderson's residence had commenced before the appeal to the trial court. The foundation was underway. Smola requested a stay to prohibit further construction, which was granted by the trial court but only for the pendency of the trial court action. In an affidavit, in support of the April 2004 motion, counsel for Smola stated that he "personally observed substantial construction work being performed on the * * * property * * *." (Emphasis added). The trial court entered a judgment entry for the return of the bond money posted for the stay to Smola, in June 2004. Since that time, the record reveals that no stay was requested by appellants pending the appeal before this court.
Thus, we conclude that the mootness doctrine applies.
 {¶ 33} Based upon the foregoing, the judgment of the Ashtabula County Court of Common Please is affirmed.
O'Neill, J., concurs in judgment only, Rice, J., concurs in judgment only.
[1] On August 12, 2003, Irene executed a quitclaim deed of the property to Anderson.
[2] The BZA filed a motion to dismiss for lack of jurisdiction on May 12, 2004, which was denied by the court.
[3] Conneaut Zoning Code 401.5 provides regulations for alterations of a nonconforming structure.